IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE: ETHICON, INC.
PELVIC REPAIR SYSTEMS
PRODUCT LIABILITY LITIGATION                MDL No. 2327

---

THIS DOCUMENT RELATES TO:

*Judith Couder v. Ethicon, Inc., et al.*                Civil Action No. 2:13-cv-00447

## MEMORANDUM OPINION & ORDER

Pending before the court is the defendants' Motion to Dismiss for Failure to Appear at Depositions [ECF No. 22] filed on July 31, 2017. The plaintiff failed to timely respond. The matter is now ripe for decision. For the following reasons, the defendants' Motion is **GRANTED in part** and **DENIED in part**.

### I. BACKGROUND

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 40,000 cases currently pending, approximately 26,000 of which are in this MDL, which involves defendants Johnson & Johnson and Ethicon, Inc. (collectively "Ethicon"), among others.

On May 11, 2017, defendants sent a letter to plaintiff's counsel asking for clarification as to who would be the primary attorney responsible for scheduling depositions. Mot. Dismiss 4:7-12 [ECF 22-1]. Defendants received no response to this

letter, nor did they receive a responses to follow-up letters to plaintiff's counsel sent on May 24, 2017 or May 30, 2017, respectively. *Id.* at 4:13-19.

Not receiving a response to any of its previous correspondence regarding the scheduling of plaintiff's deposition, defendants served a notice of deposition to depose Ms. Couder on June 8, 2017. Defs.' Mem. Supp. Mot. Dismiss 2. The deposition was set for July 12, 2017, at 10:30 a.m. *Id.* However, neither Ms. Couder nor her counsel appeared for the deposition on July 12, 2017, *Id.* at 4–5:24–2. The defendants now move to dismiss the case based upon Ms. Couder's failure to attend the properly noticed deposition.

## II. LEGAL STANDARD

Rule 37(d)(1) of the Federal Rules of Civil Procedure permits me to sanction a party who fails to show up for a properly noticed deposition or who fails to answer interrogatories or requests for inspection. Fed. R. Civ. P. 37(d)(1)(A). Permissible sanctions for these actions include dismissal of the action. Fed. R. Civ. P. 37(d)(3). Where dismissal is a potential sanction, courts have narrower discretion because "the district court's desire to enforce its discovery orders is confronted head-on by the party's rights to a trial by jury and a fair day in court." *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989) (citing *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 503 (4th Cir. 1977)); *see also Viswanathan v. Scotland Cty. Bd. of Educ.*, 165 F.R.D. 50, 53 (M.D.N.C. 1995), *aff'd*, 76 F.3d 377 (4th Cir. 1996) (applying the *Wilson* factors where a plaintiff failed to attend his own deposition). To determine whether dismissal is warranted, courts must consider "(1)

whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions." *Richards & Assocs., Inc.*, 872 F.2d at 92.

The realities of multidistrict litigation and the unique problems an MDL judge faces weigh heavy when balancing the four factors. Specifically, when handling seven MDLs, each containing thousands of individual cases, case management becomes of utmost importance. *See In re Phenylpropanolamine Prods. Liab. Litig.*, 460 F.3d 1217, 1231 (9th Cir. 2006) (emphasizing the "enormous" task of an MDL court in "figur[ing] out a way to move thousands of cases toward resolution on the merits while at the same time respecting their individuality"); H.R. Rep. No. 90-1130, at 1 (1967), *reprinted in* 1968 U.S.C.C.A.N. 1898, 1901 (stating that the purpose of establishing MDLs is to "assure the uniform and expeditious treatment" of the included cases). I must define rules for discovery and then strictly adhere to those rules, with the purpose of ensuring that pretrial litigation flows as smoothly and efficiently as possible. *See Phenylpropanolamine*, 460 F.3d. at 1232 ("[T]he district judge must establish schedules with firm cutoff dates if the coordinated cases are to move in a diligent fashion toward resolution by motion, settlement, or trial."); Fed. R. Civ. P. 1 (stating that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding"). In turn, counsel must collaborate

3

with the court "in fashioning workable programmatic procedures" and cooperate with these procedures thereafter. *In re Phenylpropanolamine*, 460 F.3d at 1232; *see also* Fed. R. Civ. P. 1. Pretrial orders—and the parties' compliance with those orders and the deadlines set forth therein—"are the engine that drives disposition on the merits." *In re Phenylpropanolamine*, 460 F.3d at 1232. And a "willingness to resort to sanctions" in the event of noncompliance can ensure that the engine remains in tune, resulting in better administration of the vehicle of multidistrict litigation. *Id.*; *see also Freeman v. Wyeth*, 764 F.3d 806, 810 (8th Cir. 2014) ("The MDL judge must be given 'greater discretion' to create and enforce deadlines in order to administrate the litigation effectively. This necessarily includes the power to dismiss cases where litigants do not follow the court's orders.").

### III. DISCUSSION

First, although I do not have sufficient facts to determine that Ms. Couder acted in bad faith, the plaintiff's failure to attend her deposition was blatant and in full knowledge of the court's orders and discovery deadlines. Accordingly, the failure of plaintiff and her counsel to appear at plaintiff's deposition leads me to weigh the first factor against the plaintiffs. *See In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 867 (8th Cir. 2007) ("While not contumacious, perhaps, this is a blatant disregard for the deadlines and procedure imposed by the court, [and t]herefore, we conclude that the [plaintiffs] did not act in good faith.").

Additionally, Ms. Couder's deposition is of utmost importance to the defendants' case because it is she who was implanted with the mesh at issue in this

4

case and she who bears the burden of proof in this case. Furthermore, as I have stressed before, MDLs exist to facilitate efficiency in voluminous matters—efficient discovery is vital. When parties fail to comply with discovery deadlines, a domino effect develops, resulting in the disruption of other MDL cases. Parties must not be permitted to disregard discovery and thereby disrupt MDL cases. Dismissal discourages the disregard illustrated in this case. Finally, I do not believe that less drastic sanctions are adequate in this situation. Lesser sanctions cannot give the defendants back the preparation time they lost in this case.

## IV. CONCLUSION

For the foregoing reasons, I **ORDER** that the defendants' Motion to Dismiss [ECF No. 22] is **GRANTED in part** and **DENIED in part**. This court **GRANTS** defendants' Motion to the extent it requests dismissal of this action, but **DENIES** defendants' Motion to the extent that it requests that dismissal be with prejudice. Accordingly, plaintiff's case is **DISMISSED without prejudice**. Defendants' Motion for Summary Judgment [ECF No. 27] is **DENIED as moot.**

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: October 24, 2017

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE